IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

JAIRIE T. PIERCE, JR.                                                                    PLAINTIFF

v.                                                                                   No. 2:11CV86-A-A

SHERIFF BRAD LANCE, ET AL.                                                               DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Jairie T. Pierce, Jr., who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have filed a motion styled as one to dismiss; however, they have referred to matters outside the pleadings, and the court treats in instant motion as one seeking summary judgment. FED. R. CIV. P. 12(d); *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). Pierce has not responded, and the deadline for response has expired. For the reasons set forth below, the motion by the defendants for summary judgment will be granted and the instant case dismissed.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert.*

*denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**General Facts as Alleged by Plaintiff**[1]

Jairie T. Pierce, Jr. was incarcerated in the Tate County Jail from December 20, 2009, through October 29, 2010. Pierce was present in the "old" Tate County Jail from December 20, 2009 until April of 2010, when he was transferred to the "new" Tate County Jail. There were six to seven inmates present in each "tank" (approximately 30' x 10.5'), which generally had six beds, one shower, one table and six chairs. The windows in the "tank" had metal welded over them.

**Facts Regarding Failure to Protect**

Pierce was transferred from the DeSoto County Jail to the Tate County Jail on December 20, 2009, at approximately 4:00 p.m. Upon arriving at the Tate County Jail, Pierce was booked by jailer, Joe Gallop, then placed in G Tank, at approximately 4:45 p.m. From approximately 5:00 p.m. to 5:30 p.m., the inmates, including Pierce, were placed on lockdown for dinner. After lockdown, Pierce walked over to a table and sat down to watch television. At that time, he heard a fellow inmate, Leroy Davis, state "Come get this man before I beat him up." About four or five minutes later, Pierce heard Leroy Davis state that he was going to "beat him up." Pierce admits that he did not know Leroy Davis was referring to Pierce himself, as he had his back turned to Davis at the time. Davis then struck Pierce from behind. Three inmates pulled Leroy Davis off of Pierce, and four jailers immediately rushed into G Tank when the incident occurred. The jailers included Joe Gallop, Steve Ross, Joe Williams and Marshall Moore. Joe Williams

---

[1] The facts set forth below are taken almost entirely from the defendants' Memorandum in Support of Motion to Dismiss. The plaintiff has not disputed these facts, and they comport with the plaintiff's submissions to the court. The court will, for the purposes of the present motion for summary judgment only, evaluate the claims in the light most favorable to the plaintiff.

and Marshall Moore, told Pierce he could have Leroy Davis written up. Pierce filed a Complaint with Tony Rowley, jail administrator, regarding Leroy Davis. As a result of the attack, Pierce sustained injuries to his eye and face. Pierce was moved to D Tank after the incident to keep him separate from Davis. About five days later, jailer Randy Polk attempted to place Leroy Davis into D Tank but first inquired of Pierce if that would be a problem. Both Davis and Pierce said that would cause trouble, and Davis was not placed into D Tank. Though Pierce alleged that Davis had previously attacked other jail inmates, he had not witnessed such an attack. Pierce believes that Leroy Davis was a menace to him, and the following defendants failed to protect him: Sheriff Brad Lance, Joe Gallop, Steve Ross, Joe Williams, Marshall Moore, Melissa Leathers and Tony Rowley.

**Facts Regarding Failure to Provide Adequate Medical Care**

As a result of the attack, Pierce alleges he has sustained injuries to his eye and face. Pierce received medical care the following Monday with jail nurse, Melissa Leathers – and continues to receive medical care and prescriptions for the alleged injuries and other medical needs.

**Facts Regarding Conditions of Confinement**

In March or April of 2010, the Tate County Jail (in its entirety) lost air conditioning for approximately five days. During this period, there was no air circulation or fans, leaving him miserable with the feeling that he was suffocating. During these five days, the inmates, including Pierce, complained of the conditions daily. Pierce has not specified whether any of the named defendants neglected the inmates.

**Facts Regarding "Strong Armed Robbery"**

While incarcerated at the Tate County Jail, Pierce was relocated from the "old" facility to the "new" facility. Pierce alleges that jailers (including Officer Chris Billingsley) in conjunction with U.S. Marshals relocated the inmates to the new jail facility. These persons were under the supervision of Lt. Randy Doss. During the relocation process, Pierce alleges that all of the inmates within his "tank" were threatened – and their property was thrown into a single pile. Pierce alleges that some of the inmates' personal property, including his own, did not arrive at the new jail facility. There was an offer of $5.00 to be place on each inmate's commissary account to offset any lost personal property during the move.

**Discussion**

**Failure to Protect**

Pierce brings a claim that the defendants failed to protect him from attack by another inmate. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference is the standard to apply regarding convicted prisoners who claim that prison officials failed to protect them. *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th ir. 1995).

The deliberate indifference standard is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In the present case, the plaintiff has not alleged that the defendants "consciously disregard[ed] a substantial risk

5

of serious harm," an element the plaintiff must prove to state a proper claim under § 1983. *Id.* at 826 (citation omitted).

Leroy Davis is an inmate who was housed with Pierce during his stay at the Tate Count Jail. Davis has a history of psychological problems and has been prescribed multiple medications as treatment for those problems. Davis had scuffled with other inmates in the past. Pierce alleged that Leroy Davis said that if the defendants did not remove "him," then Davis would beat "him" up. Pierce, whose back was to Davis, did not realize that Davis was talking about him. Davis then attacked Pierce without provocation. Pierce admitted that he, himself, could not have predicted that Davis would attack him. To the present day, Pierce does not know why Davis attacked him.

If Pierce could discern no reason for the attack, then the defendants could not have predicted it, either. Though Davis had fought with other inmates in the past, the defendants could not have known that Davis would dislike Pierce enough to attack him. Once made aware of the irrational animosity Davis harbored toward Pierce, the defendants ensured that they were kept separate, and Davis did not attack Pierce again. These facts do not demonstrated that the defendants knew of and ignored an excessive risk to Pierce's safety. As such, these allegations will be dismissed for failure to state a claim upon which relief could be granted.

## Denial of Adequate Medical Care

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards

6

in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

In cases like this one, which arises from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th

7

Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, Pierce admits that he received medical treatment for the injuries he sustained in the attack in the days following the attack up until the time of the *Spears* hearing in this case. This claim is without merit and will be dismissed.

## General Conditions

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Having reviewed the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the court concludes that Pierce's claims do not rise to the level of a constitutional violation.

Pierce and the other inmates spent five days during March or April in the "old jail" without air conditioning because the air conditioning unit failed. This condition was not repeated, and the inmates were then moved into the "new jail." In addition, the excessive heat was beyond the control of the defendants, who took steps to correct the problem, and the failure of the cooling unit certainly was not a policy or custom adopted by the defendants. In addition, Pierce suffered no harm from the five hot days spent without air conditioning – only discomfort.

8

He was not deprived of a "basic human need" for an unreasonable period of time. *See Woods*, 51 F.3d at 581. This claim will be dismissed

### "Strong Armed Robbery"

In this claim, Pierce simply alleges that, during the move from the old jail to the new one, his possessions and those of other inmates were lost. A group of defendants ordered the inmates to get against the wall, collected their property into a single big pile, and moved the inmates and the property to the new jail. The inmates were told that if they failed to comply they would be tasered. The defendants did not, however, use a taser on the inmates. Some of the inmates' property got lost during the move; other inmates received all of their property. Pierce, however, received none of his property. These facts establish only that Pierce lost his property because the defendants were negligent – that the defendants mislaid his belongings and could not find them or return them to him. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). "[The history [of the Due Process Clause] reflects the traditional and common-sense notion that the Due Process Clause, like its forbear in the Magna Carta, was 'intended to secure the individual from the arbitrary exercise of the powers of government.'"[1] The Court reasoned

> We think that the actions of prison custodians in leaving a pillow on the stairs, *or mislaying an inmate's property*, are quite remote from the concerns just discussed. Far from an abuse of power, lack of due care suggests no more than a

---

[1] *Id.*, citing *Hurtado v. California*, 110 U.S. 516, 527, 4 S.Ct. 111, 116, 28 L.Ed. 232 (1884) (quoting *Bank of Columbia v. Okely*, 4 Wheat. (17 U.S.) 235, 244, 4 L.Ed. 559 (1819)) (internal citations omitted). See also *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government . . . .")

9

> failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process law.
>
> . . .
>
> Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure or compensation is *constitutionally* required.

*Id.* (internal citations omitted) (emphasis added). The plaintiff's claim, read in a light most favorable to him, sounds wholly in negligence. Thus, under the reasoning of *Daniels* and *Davidson, supra,* the plaintiff's claim regarding the loss of his property will be dismissed with prejudice.

In sum, the motion by the defendants for summary judgment will be granted and the instant case dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 2nd day of January, 2013.

                                                **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**